We'll hear the next case, United States v. Rodney Johnson. Good morning. Good morning. One of the main issues in this case is whether the district court erred by denying my motion for a severance and then admitting such a large volume of highly prejudicial and unduly prejudicial uncharged crimes. My client was not involved in the vast majority of these uncharged crimes. There were shootings. There were shootings at people. There were shootings at rival drug dealers. There were shootings at relatives. There were shootings at cars. There were shootings at residences, placing guns under cars. My client had nothing to do with the vast majority of that. In fact, he was in prison between January of 2005 and April of 2008.  And the way in which the conspiracy operated. After he got out of prison, he joined the conspiracy, didn't he? So isn't part of the government's proof to show the existence of a conspiracy and then to show that the defendant in question joined the conspiracy? Yes, but if there's a certain body of evidence that provides that background and that demonstrates that motive, that part would come in. You wouldn't go all the way back to 2002, 2003, six years, up to six years prior to my client's involvement. You're saying your real argument then is that it was cumulative. It was too much. So they could have put in some amount of direct evidence by way of background of the conspiracy, but this was way too much. Yes, and that I specifically argued in the district court. I argued that they already have the slap coming in. Now, my client was in jail when the slap occurred. That's when one person slapped him. I understood why that came in because that was the whole motive leading into the murder. But the slap occurred in 2007 while my client was in jail. Why are we going back to 2002, 2003 and bringing in shootings at Bentleys, shooting at Jeeps, shootings at violator records? Isn't the government entitled to provide background of the relationships and how those relationships developed and why someone would actually join a conspiracy to murder or to engage in a drug conspiracy? Absolutely. But there are limits, and as Your Honor said, at a certain point it becomes cumulative. The jury hung on the murder charges anyway. That's true. I mean, it's hard to see, and given the strength of the evidence related to the narcotics, it's hard to see how there was any prejudice here. Because it just set the tone for the entire trial. I had a trial case. The tone would have been set anyway with the relevant, with the evidence that you concede would have been allowed. We had a month-long trial, and about two weeks of it involved these prior bad acts. There was a co-defendant in the case, right? There was a co-defendant, and that's why a severance should have been granted. That's your severance, I assume. Yes, and that's why the severance should have been granted. No, there was a very tribal case with respect to the narcotics conspiracy and guns. The government, they say in their brief that my client was caught red-handed. Neither the Jeep where a gun and drugs were recovered, nor the Bayside Residence where a gun and drugs were recovered belonged to my client. Your client was found hiding in the home where the drugs were located. And Ronald Anderson was acquitted. He was the co-defendant who was in the Bayside Residence, and he walked out the door and was arrested just moments before my client. He had his name on the lease, and he was acquitted of the gun and the drugs in the Bayside Residence, which formed a... The same two, was it Mr. Abdullah and the other person? The same two cooperators testify in that case? Yes. Yes, the same cooperators. And they too testified that Ronald Anderson wasn't just there the day on April 28, 2010 when the gun and drugs were recovered, but instead had been involved in some type of... Here there was a direct tie. So there was a person who was taken off and then provides the agents with specific information about the jeep, and they can tie that directly to your client. And the cocaine, whatever it is, the drugs, are found in the location that the person says they're going to be found in. Is that correct? Partially, because Brian James did give a statement and there was conflicting statements by the DEA officers, by the special agents, as to what he had said. We introduced at the suppression hearing... I guess my point is that that was... So your client gets acquitted of the murder-for-hire portion, but there was plenty of other evidence beyond what you would characterize as cumulative evidence of his participation in the drug conspiracy and in crimes. Well, the cumulative referred to all those acts of violence. With respect to the evidence that there directly on whether he possessed the guns and drugs between 2008 and 2010, the case was not that strong. They never had any audio or video recordings. He had a key to the stash house. He was the driver of the jeep, which contained drugs in it. We don't know he was the driver of the jeep without testimony by the cooperating witness. Well, you have corroboration of the fact that what the witness tells the police, and then the seizure is made of the jeep. What the witness told the police, and that's the point I was trying to make before, what the witness told the police when they went and did the search of the jeep was that there was another person present who may have observed the trans... what occurred from a Starbucks shop, and he was in another jeep. The witness didn't say that my client was involved, that he was a participant in the transaction. Once the suppression hearing came along, the statement that was attributed to that cooperator was beefed up a bit. It was saying that my client was involved, but the handwritten notes were introduced into evidence at the suppression hearing in which the assistant United States attorney wrote simply that someone else was present, they were in a jeep, they may have seen what occurred. The testimony from the cooperators was as Judge McMahon said, they were some of the worst cooperators she had ever seen. They had tampered with witnesses, they had paid $25,000 to get a false affidavit to get acquitted of a murder, they admitted to telling lies during the proffers during the case, they stole money... When the police went and searched the stash house, they found your client hiding in the stash house, and in that stash house they found a machine gun. Machine guns in the closet, in the top shelf of the closet, in the back. 16,000 in cash, packaging materials, and so there was a fair amount of evidence against your client. The cocaine was in a kitchen cabinet, there was cocaine in a kitchen cabinet, the apartment was, at least the apartment was introduced. Couldn't a jury infer that because your client was hiding in the stash house when the police came in, that he was hiding for a reason, that he knew all of this stuff would be he was associated with it and was concerned about being arrested? They could infer that plainclothes police officers or plainclothes individuals who he does not know are police officers are coming in through the front door with a battering ram. I guess the question is, with all this other evidence, why shouldn't we view, even if we agree with you that it was error to have all of this cumulative evidence either under 404B or as direct evidence, why was that error not harmless? Again, I'd point out to Ronald Anderson, whose name was on the Bayside lease. He was acquitted because the guns and drugs were not in plain view. There was no testimony except for through the cooperators that my client had ever been to that Bayside residence before. The apartment wasn't in his name. He had no documents. So it was a very close case. It was a tribal case. It was a very tribal case. Yes, it was a close case. I think it was a close case. Thank you. We'll hear from the government. May it please the Court. My name is Thomas McKay. I'm an assistant United States attorney in the Southern District. I represent the United States on this appeal. Rodney Johnson had a fair trial at which the government presented overwhelming evidence of his guilt on the narcotics and firearms counts in counts five through seven. I'd like to start by addressing the point on which Mr. Yanella focused his argument, which is the other acts of violence. As Judge Walker's initial question indicated, and as Judge McMahon correctly found, and this is at Special Appendix page 60, the history of violence between these warring  factions had, why Fletcher would assault Roseman's son, why Roseman would want Fletcher dead, and why Johnson would be willing to see the deed done. I understood Defense Counsel's brief at pages 16 to 17 and Mr. Yanella just now in his argument to concede that at least some of these acts of violence were relevant evidence, direct evidence of the conspiracy. And the argument was essentially that it was cumulative. It was too much. At some point we crossed the line. And I'd note initially that where to draw that line in terms of what amount of relevant evidence is cumulative is something that's entrusted to the District Court in the first instance and reviewed for abuse of discretion. And I think that Judge McMahon properly exercised her discretion here. I'll note to a few things that she did which demonstrate that she carefully considered this. The first is that she in fact precluded several acts of violence which the government sought to introduce but which Judge McMahon found had a less clear connection to the feud between the two warring groups. And the decision on that is at Special Appendix page 61. She also evidenced a sensitivity to the severance arguments made by Mr. Johnson when she severed Ronald Anderson. But when Johnson said that he too should be severed on the narcotics accounts, Judge McMahon made the very specific point that Johnson, unlike Anderson, was charged in the murder conspiracy. And so these acts of violence were independently admissible against Johnson even had he gone to trial himself. As Judge Chin pointed out, all of this evidence was specifically directed at the murder counts and the jury was so instructed that it was to be considered only with respect to the murder counts. And the jury's split verdict, not convicting Mr. Johnson on the murder counts, showed that they knew how to sort and sift between different types. Was it clear, by the way, that juror number 12 was the juror that hung the verdict? The juror that hung the jury? Your Honor, we can never say for certain what happened back in that jury room, but certainly there was very strong suggestion that it was, in fact, juror number 12. She was the juror who had come out in tears at some point speaking to the deputy. The investigation that Judge McMahon did into whether or not she'd been tampered with, it seems to me, was she did that, but in any event, their quarrel is not with juror number 12. Their quarrel is with the other jurors because juror number 12 presumably hung the jury on them and that somehow her investigation should have gone further to cover the other jurors as well in order to somehow get a new trial on the drug counts. Judge, I think the Second Circuit case law is clear, first of all, that the District Court has wide discretion to supervise the scope of any inquiry into alleged jury tampering and that the scope must be limited to only what is absolutely necessary to determine the facts. Not to engage in a fishing expedition or to try and figure out what impeached the jury in some way. Precisely, Your Honor. And between the evidence that juror number 12 was the non-deliberating juror and the comments that gave rise to the investigation in the first place, all of that was found only on juror number 12. And for that reason, when it became clear that she was not, in fact, tampered with, there was no reason to conduct the fishing expedition that you mentioned. Finally, I would just note that in response to the harmlessness argument, Mr. Unella pointed out that a co-defendant, Ronald Anderson, was convicted of the narcotics counts when he was tried by himself. I think there's a very significant difference between Ronald Anderson and... He was acquitted, not acquitted. My apologies, Your Honor. He was acquitted. And that is this. Although both Mr. Johnson and Mr. Anderson were arrested at that stash house where kilograms of cocaine and a gun were found, Mr. Johnson is different in the respect that the police also seized his Jeep. A Jeep that was registered in his sister's name. A Jeep that had bank documents and letters and other mail. Directly linked to him. Directly linked to him. And which, of course, the witness testimony was that he had driven to the scene of the crime that day. Let me ask you about the summation. Yes, Your Honor. So, Mr. Johnson asserts that the government pulled up defense counsel's summation on the projector. Is that correct? That is, Your Honor. And would you agree with me that at a certain point, if all the government is going to do is put up the summation of defense counsel, that becomes problematic? I'm not sure that it is, Your Honor. I mean, the government put up an accurate quotation of what defense counsel argued. It accurately quoted it in making its argument. And I would also note that the government repeatedly, in its own summations, reminded the jury that arguments are not evidence. They did that at pages 2371, 2348, 2360. What the government was doing was, I think, making a very fair reply in pointing out the tension between two countervailing defense arguments. On one hand, you can't consider this payment of cocaine as evidence of murderous intent because these guys are moving so much cocaine that this is run of the mill. And on the other hand, Johnson is not guilty of the cocaine charges. There's a tension between those arguments, and the government is entitled to point out the tension between defense arguments in reply. And even if it were improper in some respects, Your Honor, it's an isolated statement over a summation that was in the reply summation. The summations were many hours. It was a five-week trial. The evidence was very strong. That isolated statement would not be grounds for me. Your point is that at least part of the defense counsel's summation coincided with what the government's position was, which you were arguing. And therefore, you were entitled to, in effect, enlist their support as well in getting a conviction. Well, Your Honor, Mr. Yanella's argument, which the government accurately quoted, was, of course, based on the evidence, just as the government's argument was. And so by pointing out what the import of Mr. Yanella's interpretation of the evidence was, I think we were making a point. It does seem that maybe in the heat of rebuttal, the government spoke perhaps ill-advisedly by saying, ladies and gentlemen, that alone, referring to the argument of Mr. Yanella, should be enough for you to convict Mr. Johnson of the drug conspiracy. But, you know, that's just semantics. I mean, it certainly would have been possible to say that the evidence to which Mr. Yanella referred is sufficient for you to convict of the drug conspiracy. Precisely, Your Honor. And as you said, the statement was made in the heat of rebuttal argument. This Court's case law says that closings, particularly rebuttal closings, are not detached expositions. And for that reason, courts aren't going to lightly infer the most dangerous meaning from every comment that is made in a prosecutor's rebuttal. Furthermore, Judge McMahon, who heard the summations live, in person, and heard the tone and the inflection and all the context that goes with it, said, in response to Mr. Yanella's point that the government had made an improper argument, that she heard no such thing. In any event, she instructed the jury both before and after summations that the arguments of counsel are not evidence. So for that reason, we do not think that that statement was improper. And even if it were, that isolated statement wouldn't be grounds for a new trial. If there are no further questions, we'll rest on our written submission and ask that the convictions be affirmed. Thank you. We'll hear the rebuttal. I'd just like to make a few points. Following up on the argument that I made previously, that the judge could have picked a certain number of acts to come in to provide the context, if you look at page 14 of my brief, I list there all the prior bad acts that came in. As Mr. McKay pointed out, once you go down this road and you concede or acknowledge that some amount of evidence could have come in, either as 404B or direct evidence, by way of showing background and the relationship between the various actors and so on, that you're very hard-pressed to show how the district court abused its discretion in determining how much of that evidence. And then, you also hit a wall when, as Mr. McKay pointed out, Judge McMahon clearly precluded some of that evidence. So she exercised her discretion at some level. Maybe 5% was excluded. And I think if there ever were a case, look at pages 14 of my brief to look at the quantity of uncharged. Just two other points. We never did get a breakdown whether it was 11 to 1 or 10 to 2. I think the government's inferring that it was 11 to 1 because there was a note that said one juror won't deliberate. And just with respect to the closing argument, maybe it's heated the argument, but when you put the other attorney's closing argument on the board, there's some premeditation in that. That's not just an off-the-cuff statement during closing argument.  reverse the conviction.